UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELLE COX, | Case No. 2:20-CV-1792 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| RYAN LEWIS, et al., | |
| Defendant(s). | |

Presently before the court is defendants Ryan Lewis ("Lewis"), Jorge Palacios ("Palacios"), and Clark County School District's ("CCSD") (collectively "defendants") motion to dismiss plaintiffs Michelle Cox ("Cox") and M.C.'s (together "plaintiffs"), first and third claims for relief and to dismiss Lewis and Palacios from this matter in their official capacities. (ECF No. 7). Plaintiffs filed a response (ECF No. 9), to which defendants replied (ECF No. 13).

**I.   Background**

During the 2018–2019 school year, Cox was employed by CCSD as a teacher at Edith Garehime elementary school ("Garehime"). (ECF No. 1 at 4). That year, Lewis and Palacios were the principal and assistant principal of Garehime, respectively. (*Id.* at 3). During the same period, Cox's daughter, M.C., was a fifth-grade student at Garehime. (*Id.* at 4).

According to plaintiffs, beginning in fall of 2018, M.C. was bullied and threatened by another student in M.C.'s class, L. (*Id.* at 2, 4). Plaintiffs allege that Cox reported L.'s bullying and threatening of M.C. to M.C.'s teacher, Ms. Kress; Palacios; Lewis; and Lewis' supervisor. (*Id.* at 4–5, 8).

However, when Cox complained about defendants' failure to adequately address L.'s bullying and threats, defendants retaliated against her. (*Id.* at 2). Specifically, plaintiffs allege

**James C. Mahan**
**U.S. District Judge**

that Cox had to take leave under the Family and Medical Leave Act to care for M.C., and, while CCSD approved her leave, CCSD interfered with the leave by penalizing Cox and by ultimately forcing her to resign. (*Id.*).

Plaintiffs further allege that defendants knew L. posed a danger to other students. (*Id.*). Nevertheless, defendants put M.C. in proximity to L., thereby exacerbating M.C.'s severe emotional distress. (*Id*). Plaintiffs allege that, by ignoring L.'s dangerous proclivities and allowing M.C. to be placed near L., defendants caused M.C. to develop severe anxiety and depression, which negatively affected her access to school. (*Id.*).

Finally, according to plaintiffs, CCSD knew that M.C. had mental health conditions, yet it did not identify M.C. as a student with disabilities under Section 504 of the Rehabilitation Act of 1973. (*Id.*). By refusing to provide M.C. with accommodations, plaintiffs allege that CCSD forced M.C. to withdraw from two schools, Leavitt Middle School ("Leavitt") and Nevada Learning Academy ("NVLA"). (*Id.* at 2, 22–23).

Accordingly, plaintiffs, represented by Cox as an individual and Cox on behalf of her daughter, M.C., bring, *inter alia*, two claims for relief against all defendants: one under 42 U.S.C. § 1983 ("Section 1983") for First Amendment retaliation and one for violation of Section 504 of the Rehabilitation Act of 1973. (*Id.* at 15–17, 20–24). Defendants now move to dismiss those two claims against all defendants, as well as to dismiss defendants Lewis and Palacios from this matter in their official capacities. (ECF No. 7).[1]

**II.   Legal Standard**

Federal Rule of Civil Procedure 8 requires every pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a pleading must have *plausible*

---

[1] Defendants do not, however, move to dismiss Lewis and Palacios in their individual capacities. ECF No. 13 at 3 ("While Lewis and Palacios will remain as defendants in their individual capacity for purposes of this Motion, this issue will be addressed in a subsequent request for dismissal, as each individual is immune from prosecution based on the facts of this case.").

factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Federal Rule of Civil Procedure 15(a), the court should "freely" grant leave to amend "when justice so requires," and absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

**III.   Discussion**

   **A. Defendants in their official capacities**

A suit against a municipal officer in his or her official capacity is "equivalent to a suit against the entity." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Thus, a court may dismiss an individual named in his or her official capacity when both the official and the entity are named in the suit. *Id.*

Plaintiffs acknowledge the claims against Lewis and Palacios in their official capacities are treated the same as the claims against CCSD but contend there is no practical purpose to dismiss them. (ECF No. 9 at 21). Defendants contend it is duplicative to retain defendants Lewis and Palacios in their official capacities. (ECF No. 13 at 12). The court agrees with defendants.

Thus, the court GRANTS defendants' motion to dismiss as to defendants Lewis and Palacios in their official capacities and DISMISSES them from this matter.

### B. Section 1983 First Amendment retaliation claim

To survive a motion to dismiss a Section 1983 claim, plaintiffs must establish that a constitutional violation occurred. 42 U.S.C. § 1983. To establish the constitutional violation of First Amendment retaliation, plaintiffs must establish an adverse action occurred and must satisfy their burden under the *Pickering* test. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (discussing *Pickering v. Bd. of Educ.* 391 U.S. 563 (1968)).

For liability to attach to a municipality defendant, like CCSD, plaintiffs must show that some policy, final policymaker, ratification by a policymaker, or de facto policy propagated the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Lytle v. Carl*, 382 F.3d 978, 982, 987 (9th Cir. 2004); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

#### 1. Plaintiffs sufficiently allege that Cox experienced an adverse employment action

For there to be First Amendment retaliation, a plaintiff must have suffered an adverse employment action. *Coszalter*, 320 F.3d at 977. An adverse employment action is any action taken by the defendant that is "reasonably likely to deter plaintiffs from engaging in speech protected under the First Amendment." *Id.* (internal quotations omitted). The action "need not be severe and it need not be of a certain kind." *Id.* at 975.

The Ninth Circuit has held an employee sufficiently stated an adverse employment action for a Section 1983 claim when his employer "subjected him to an investigation that threatened to revoke his clinical privileges . . . refused to rescind his resignation, and filed an adverse action

James C. Mahan
U.S. District Judge

- 4 -

report against him." *Ulrich v. City & Ctny. of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002). Similarly, the Ninth Circuit held a plaintiff's allegations that he was "temporarily suspended from his coaching duties and insulted by his employer" constituted an adverse employment action. *Coszalter*, 320 F.3d at 975 (describing the facts that constituted an adverse employment action in *Anderson v. Cen. Point Sch. Dist.*, 746 F.2d 505, 506 (9th Cir. 1984)).

Here, plaintiffs generally allege that, after Cox complained that defendants' efforts to address M.C.'s bullying were inadequate, Cox was reprimanded by Lewis to the point Cox feared losing her job. (ECF No. 1 at 16).

Plaintiffs specifically allege that Lewis initiated disciplinary action against Cox in the form of a disciplinary meeting. (ECF No. 1 at 8, 16). Cox's disciplinary meeting ultimately resulted in a notation in her file. (ECF No. 9 at 10). Further, despite Cox allegedly submitting evidence supporting the high quality of her job performance, Cox's performance evaluation score was lower than other teachers' scores. (*Id.* at 11).

At this motion to dismiss stage, the court accepts as true all well pled allegations and draws all inferences in favor of the non-moving party. *Iqbal*, 556 U.S. at 678–79. Accepting as true that Cox's grievance was followed by a disciplinary meeting which concluded with an unmerited notation on her file and that Cox feared losing her job as a result, the court holds—for pleading purposes only—that Lewis and Palacios' actions reasonably deterred Cox from exercising her right to express protected speech.

Accordingly, plaintiffs allege sufficient plausible facts to draw a reasonable inference that an adverse employment action occurred.

**2. Plaintiffs satisfy their *Pickering* burden to establish First Amendment retaliation by Lewis and Palacios**

Once adverse action has been established, the court analyzes a claim for First Amendment retaliation toward state employees using the Ninth Circuit's *Pickering* test. Under the *Pickering* test, the court considers the following five factors:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5)

James C. Mahan
U.S. District Judge

- 5 -

whether the state would have taken the adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070 (unraveling *Pickering*'s tangled history to articulate a sequential five-step series of considerations).

The *Pickering* test is a burden-shifting test. If the plaintiff alleges facts sufficient to satisfy steps one through three, the burden shifts to the defendant to satisfy step four by showing "adequate justification," or, alternatively, satisfy step five by demonstrating that the defendant would have taken the same action absent the protected conduct. *Id.* at 1071–72.

Therefore, to state a *prima facie* claim of First Amendment retaliation, plaintiffs must allege facts sufficient to show i) Cox spoke on a matter of public concern, ii) Cox spoke as a private citizen, not a public employee, and iii) Cox's protected speech was a substantial or motivating factor in the adverse employment action. *See Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004).

    **i.**    **Plaintiffs sufficiently allege that Cox spoke on a matter of public concern, whether the public can trust CCSD to safeguard students from harm at school**

Speech is a matter of public concern when it relates to "any matter of political, social, or other concern to the community." *Eng*, 552 F.3d at 1070 (internal quotations omitted). "The focus must be upon whether the public or community is likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance." *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997). A public employee's protected speech is protected whether expressed privately or publicly. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979).

Here, plaintiffs allege that Cox complained about Garehime's failure to investigate and address the bullying subjected onto M.C. (ECF No. 1 at 16). Bullying is a matter of public concern that the state of Nevada has specifically attempted to address in recent years. *See, e.g.*, NEV. REV. STATS. 388.122,[2] 388.1321.[3] Indeed, Nevada's legislature agrees with plaintiffs that a

---

[2] "Bullying" defined.

school's administration should provide a bullying free learning environment for the benefit of the public. *See* NEV. REV. STAT. 388.132.[4]  Cox's speech thus relates to a public social concern; whether community members can entrust public schools and administrations to provide a safe learning environment by taking action against bullying at school.

Although defendants urge the court to consider that Cox's intended audience was not the public (ECF No. 7 at 11–12), her private speech is no less protected than if she expressed it publicly.  *Givhan*, 439 U.S. at 414.  Thus, plaintiffs adequately allege that Cox's speech is plausibly of interest to the community's social concern of bullying, and not exclusively a private grievance.

Accordingly, plaintiffs satisfy part one of the *Pickering* test.

### ii. Plaintiffs sufficiently allege that Cox spoke as a private citizen, not a public employee

For step two, Cox's speech must have been made as a private citizen rather than as a public employee.  *Eng*, 552 F.3d at 1070.  Plaintiffs allege that Cox's speech was made as a parent, not as a teacher.  (ECF No. 1 at 16).  Defendants do not dispute that contention.  (*See* ECF No. 7 at 8–9).  Therefore, plaintiffs sufficiently allege that Cox's speech was made as a private citizen, not a public employee.

Accordingly, plaintiffs satisfy part two of the *Pickering* test.

### iii. Plaintiffs sufficiently allege that Cox's speech was a substantial or motivating factor in the adverse action

Next, plaintiffs must allege that Cox's protected speech was a substantial or motivating factor in the adverse employment action.  Plaintiffs can show such a connection by introducing evidence of one of the following: (1) "proximity in time" between the protected speech and the

---

[3] "The Legislature hereby declares that the members of a governing body and all administrators and teachers have a duty to create and provide a safe and respectful learning environment for all pupils that is free of bullying . . . ." NEV. REV. STAT. 388.1321(1).

[4] "All administrators, teachers and other personnel of the school districts and schools in this State [will] demonstrate appropriate and professional behavior . . . by refusing to tolerate bullying . . . and by taking immediate action to protect a victim or target of bullying . . . [when] being notified that bullying . . . is occurring or has occurred." NEV. REV. STAT. 388.132(6)(b). "By declaring this mandate . . . the Legislature is . . . requiring that pupils be free from physical, emotional or mental abuse while at school and that pupils be provided with an environment that allows them to learn." NEV. REV. STAT. 388.132(7).

James C. Mahan
U.S. District Judge

adverse employment action, "from which a jury logically could infer . . . the [adverse employment action was taken] in retaliation for [the] speech;" (2) her employer, CCSD, "expressed opposition" to the speech; or (3) the reasons CCSD provided for the adverse employment action "were false and pre-textual." *Coszalter*, 320 F.3d at 977 (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001)).

Here, plaintiffs allege that, on the day Cox complained about Lewis' failure to address M.C.'s bullying, Lewis yelled at Cox, reprimanded her, and told her she needed to "watch [her] attitude." (ECF No. 1 at 7). Plaintiffs further allege that CCSD initiated disciplinary action, in the form of a disciplinary meeting, against Cox the following day. (*Id.* at 7–8). Next, plaintiffs allege that Cox's performance evaluation echoed statements from her disciplinary meeting. (*Id.* at 11). Specifically, that Cox's "Area for Growth" stated that she needed to "model integrity in all interactions." (*Id.*). Finally, plaintiffs allege that Palacios refused to clarify the meaning of statements in Cox's evaluation and refused to provide Cox with a copy of the evaluation. (*Id.*).

Drawing all inferences in favor of the non-moving party, plaintiffs have sufficiently alleged that Cox's disciplinary action was taken in retaliation for her speech. Therefore, plaintiffs have sufficiently pled that Cox's speech was a motivating or substantial factor in the adverse employment action taken against her.

Accordingly, plaintiffs satisfy part three of the *Pickering* test.

Plaintiffs have thus established a *prima facie* First Amendment retaliation case, meeting their burden to show a constitutional violation at the motion to dismiss stage. As Lewis and Palacios in their individual capacities are not at issue in this motion (*See* ECF No. 13 at 3), the court now determines whether liability for this violation may attach to CCSD as a municipality.

### 3. Municipal liability may not attach to CCSD

To assert a 42 U.S.C. § 1983 ("Section 1983") constitutional violation claim against a municipality, a plaintiff must sufficiently allege that the complained of constitutional violation resulted from one of the following: (i) a municipal "policy, practice, or custom," *see Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694); (ii) an

employee "acting as a final policymaker," *Lytle,* 382 F.3d at 982; (iii) the ratification of a final policymaker, *Id.* at 987; or, (iv) a de facto policy, *see Praprotnik*, 485 U.S. at 127.

### i.  Plaintiffs fail to show CCSD had a policy, practice, or custom of retaliation

To state the constitutional violation resulted from CCSD's "policy, practice, or custom," Plaintiffs must allege facts sufficient to establish CCSD's liability under *Monell*. *See Dougherty*, 654 F.3d at 900. Thus, plaintiffs must allege that: (1) Cox was deprived of a constitutional right; (2) "[CCSD] had a policy;" (3) the policy "amount[ed] to deliberate indifference to [Cox's] constitutional right;" and (4) the policy was the "moving force behind the constitutional violation." *Id.*

As plaintiffs satisfy the *Pickering* First Amendment retaliation test, plaintiffs sufficiently allege that Cox was deprived of a constitutional right. Further, plaintiffs allege a "policy" in that CCSD has a "pattern and practice of permitting principals to retaliate against staff and parents who complain." (ECF No. 1 at 17). However, this allegation is merely a bare recitation of the element that the municipality has a policy, and the court strikes this allegation from consideration. *See Iqbal*, 556 U.S. at 678–79

Additionally, plaintiffs allege that "[n]umerous other staff have complained about CCSD's pattern and practice of retaliation against staff and parents who complain." (*Id.*). Plaintiffs also allege that "[o]ther staff and parents who have complained have experienced retaliation and have found that CCSD took no action in response to reports of retaliation." (*Id.*). However, plaintiffs fail to otherwise allege facts sufficient to draw a reasonable inference that any such policy officially existed.

Accordingly, plaintiffs fail to show CCSD had a policy, practice, or custom of retaliation.

### ii.  Plaintiffs fail to show that Lewis was a final policymaker

Liability may also attach to CCSD if the alleged constitutional violation resulted from a CCSD employee who was "acting as a final policymaker." *Lytle*, 382 F.3d at 982. In a school district context, a final policymaker is someone "in a position of authority such that a final decision by that person may appropriately be attributed to the District." *Id.* While certain employees may act as de facto policymakers, it is typically not justified to assume that

James C. Mahan
U.S. District Judge

- 9 -

"municipal policymaking authority lies somewhere else than where the applicable law purports to put it." *Id.* at 982–83.

Here, plaintiffs allege that Lewis, Garehime's principal, was a final policymaker because CCSD gave him authority to initiate investigatory review and complete evaluations. (ECF No. 9 at 16). Plaintiffs also allege that no action was taken when Cox complained about the retaliation to Mr. Lewis' supervisor, CCSD investigators, CCSD's superintendent, and a CCSD trustee. (ECF No. 9 at 17; ECF No. 1 at 8, 9, 12, 14, 17). Further, plaintiffs allegedly received confirmation that one supervisor, Ms. Hembrook "could not fully investigate the retaliation." (ECF No. 1 at 17).

Notwithstanding those facts, plaintiffs fail to show why Lewis, as a school principal, would have de facto final policymaking authority for CCSD. Even drawing all inferences in favor of plaintiffs, the allegations of Lewis' ability to investigate and evaluate his own employee are insufficient to establish Lewis had a "final" policymaker role within CCSD. That Lewis required CCSD's grant of authority to conduct the investigation is evident of his subservient role within CCSD, not a final policymaker role.

Accordingly, plaintiffs fail to show that Lewis was a final policymaker.

### iii. Plaintiffs fail to show a final policymaker ratified a constitutional violation

Plaintiffs can also establish CCSD's liability if the complained of constitutional violation resulted from a CCSD employee's actions and those actions were ratified by a final policymaker. *Lytle*, 382 F.3d at 987. To establish ratification, plaintiffs must show that a policymaker had "knowledge of the constitutional violation and actually approve[d] of it." *Id.* That the policymaker simply failed to overrule its employee's actions is insufficient to establish ratification. *Id.; Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 781–82 (9th Cir. 1997); *Christie v. Iopa*, 176 F.3d 1231, 1239–40 (9th Cir. 1999).

Plaintiffs fail to sufficiently allege that any CCSD policymaker ratified Lewis' actions. Plaintiffs do allege that Cox notified CCSD leadership, including the superintendent, that she was being retaliated against because of her speech. However, plaintiffs do not allege facts

sufficient to support a reasonable inference that CCSD leadership approved of Cox being retaliated against for her speech.

Additionally, plaintiffs' mere assertion that CCSD's leadership failed to overrule Lewis' actions is insufficient to support the inference that a final policymaker approved of the constitutional violation. *See, e.g.*, *Lytle*, 382 F.3d at 987; *Weisbuch*, 119 F.3d at 781–82; *Christie*, 176 F.3d at 1239–40.

Accordingly, plaintiffs fail to show that Lewis' decision was ratified by a final policymaker.

### iv. Plaintiffs fail to show that a de facto policy of retaliation existed

In addition, plaintiffs can establish municipal liability if they sufficiently allege that CCSD had a de facto policy that resulted in the constitutional violation. *Praprotnik*, 485 U.S. at 127. A de facto policy is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks omitted). "[I]solated or sporadic incidents" are insufficient to enable municipal liability." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Rather, plaintiffs' theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

As previously discussed, plaintiffs allege that "[n]umerous other staff have complained about CCSD's pattern and practice of retaliation against staff and parents who complain." (ECF No. 1 at 17). Plaintiffs also allege that "[o]ther staff and parents who have complained have experienced retaliation and have found that CCSD took no action in response to reports of retaliation." (*Id.*).

Plaintiffs' allegation that "numerous other staff have complained plausibly states CCSD's policy of retaliation was frequent and consistent. (ECF No. 1 at 17). However, plaintiffs fail to provide any factual specificity to support a reasonable inference that CCSD has a de facto policy "with the force of law" to permit principals to retaliate against staff and parents who complain. *Praprotnik*, 485 U.S. at 127.

James C. Mahan
U.S. District Judge

- 11 -

Accordingly, plaintiffs fail to show a de facto policy existed.

As plaintiffs fail to show any sort of policy existed, the court need not determine whether a non-existent policy was deliberately indifferent or the moving force behind the adverse action.

Therefore, defendants' motion to dismiss is GRANTED as to plaintiffs' Section 1983 First Amendment retaliation claim against CCSD.

### C. Section 504 Rehabilitation Act of 1973/Title II of the Americans with Disabilities Act

Before considering the merits of plaintiffs' Section 504 Rehabilitation Act claim, the court must determine whether plaintiffs' claim is properly brought before this court at this time.

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), plaintiffs must exhaust all administrative remedies under IDEA before seeking judicial relief for M.C. being denied a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1415(l); *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 754 (2017).

To determine whether a suit seeks relief for FAPE, "a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752. Whether plaintiffs use particular labels or terms to name FAPE is unimportant. *Id.* at 755.

Two hypothetical questions can inform whether the gravamen of the complaint concerns FAPE. *Id.* at 756. First, could plaintiffs have brought "essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?" *Id.* (emphasis in original). Second, "could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance?" *Id.* (emphasis in original). The gravamen of the complaint likely concerns FAPE when the hypothetical questions are answered in the negative. *Id.*

Here, plaintiffs fail to state that their claim is immune from the requirement to exhaust administrative remedies under IDEA because they fail to allege any facts suggesting they are seeking relief for something other than the denial of FAPE.

Plaintiffs allege that M.C. had two mental health conditions, anxiety and depression. (ECF No. 1 at 21). Plaintiffs further allege that Cox had M.C. evaluated for a Section 504 plan and M.C. was found to be an eligible student with a disability under Section 504. (*Id.*).

James C. Mahan
U.S. District Judge

- 12 -

Thereafter, CCSD developed a Section 504 plan for M.C. to provide "accommodations of extra time on homework and assignments of up to [two] days, as well as home support in the event of more than [two] days of absences." (ECF No. 1 at 21; ECF No. 7 at 5).

Plaintiffs further allege that CCSD failed to provide accommodations and modifications it knew M.C. required because of L.'s harassment and bullying. (ECF No. 1 at 24). Specifically, Plaintiffs allege CCSD so failed when it did the following: denied M.C. additional time to complete assignments, denied M.C. a modification to the attendance policy or class scheduling to allow her to reenter school gradually, withdrew M.C. from Leavitt and told her the only way she could continue was to attend full time, and prevented M.C. from continuing at NVLA. (*Id.*). Additionally, plaintiffs allege M.C. was denied equal access to CCSD's programs and education because CCSD failed to accommodate M.C. (*Id.*).

Nothing within those allegations suggests that plaintiffs could have brought this claim in another public facility or that an adult could have brought this claim. The remainder of Plaintiffs' complaint is similarly deficient of such plausible factual allegations. Plaintiffs' sole contention that "[t]his is a claim that could have been brought in another setting and by an adult with a disability," is merely a threadbare recitation of the legal inquiry that the court strikes from consideration. (ECF No. 9 at 20).

Thus, plaintiffs fail to allege facts that plausibly establish the gravamen of the complaint is for anything other than denial of FAPE. Indeed, the facts alleged strongly suggest a claim for denial of FAPE. Therefore, plaintiffs have not provided evidence of administrative exhaustion for this claim, this claim must first be heard by an administrative agency before the court can consider its merits.

Accordingly, defendants' motion to dismiss plaintiffs' third claim for relief is GRANTED.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 7), be, and the same hereby is, GRANTED. Defendants Lewis and Palacios,

James C. Mahan
U.S. District Judge

- 13 -

in their official capacities, are DISMISSED from this matter.  Plaintiffs' First Amendment retaliation claim is DISMISSED against defendant CCSD, without prejudice.  Plaintiffs' Section 504 claim is DISMISSED, without prejudice.

DATED September 23, 2021.

_____
UNITED STATES DISTRICT JUDGE